I am Benjamin Gutman, representing the Equal Employment Opportunity Commission as plaintiff in this case. Peabody, the defendant in this case, operates mining operations on the Navajo Reservation. The leases that Peabody entered into with the Navajo Nation require the company to give employment preferences to Navajo Indians. We filed this lawsuit against Peabody alleging that the company is discriminated against non-Navajo Native Americans by refusing to constitutes illegal discrimination on the basis of national origin under Title VII. Now, in response, Peabody neither admits nor denies that it has, in fact, discriminated in the manner that we allege. And nor at this stage of the proceedings does it argue that this discrimination is, in fact, legal under Title VII. What's argued instead is that the court cannot reach the merits of that issue for two procedural reasons. Well, procedural and constitutional reasons. First, because the Navajo Nation is an indispensable party to the lawsuit whose joinder is not feasible. And second, because the lawsuit raises a non-justiciable political question about the validity of the lease provisions. We contend that neither one of these arguments is correct. Turning first to the joinder issue, we agree that the Navajo Nation is a necessary party. The tribe has an interest in these leases. The tribe is a party to these leases. Part of the relief that we are seeking is an injunction preventing Peabody from discriminating in the future. That would require an invalidation of a clause of the lease, the leases at issue. In our view, though, nothing prevents the tribe's joinder to this action. The district court reached a contrary conclusion basically pointing to two things in Title VII that it thought prevented the tribe's joinder. The first is the division of authority between the EEOC and the Attorney General with respect to enforcement of Title VII against State and governmental employers. And the second one, just quickly, is the fact which is, in fact, very similar, is the related definition of employer under Title VII excludes Indian tribes. So there's no question but what the EEOC does not have the power to bring a cause of action directly against the tribe. That's not contested. No, that's absolutely uncontested. But nor does this tribe have sovereign immunity from the United States government. That's exactly correct. And I think what this case comes down to is the question of whether under Rule 19, in order to join a party as a defendant, does a plaintiff need to assert an independent cause of action against that defendant to join them? And we contend no. I am sometimes a late preparer. And if I had prepared myself fully for this case a week ago, I would have sent you a letter to the National Wildlife Federation versus ESPE, decided in 1995, in which I think we held the citation is 45F3rd 1337 in an opinion by Judge Browning, in which we held that the plaintiff does not need to state a cause of action against a party sought to be joined under Rule 19A. And that's exactly our contention. And we did not cite that case. But I think that's the import of the Lake Mojave case that we cited as well, which may actually post-state. And there's a case that was cited by the Peabody Coal Company, although predictably, given what it held, it was cited with a CF. And it's coming out of the Sixth Circuit. It's the McMillan-Blodell case. Yes. And we cited that one as well. And I think that's a good example. And I think both sides are aware of that case. In a way, that's more closely on point, because it is an EEOC case in which there's a Rule 19A joinder of a union that's on the outside, against which a cause of action could not be stated by the plaintiff. But nonetheless, joinder is allowed. And that's typically where we see these cases come up. We have a – for example, we would have a cause of action against a company for a discriminatory act. We're trying to get a plaintiff – they fired somebody, let's say. We're trying to get the plaintiff reinstated. And we want to ensure that they're going to get their full seniority rights when they're reinstated. And so we may need to join a union that's done absolutely nothing wrong just to ensure that the seniority rights are preserved. And we're not suggesting that the union did anything wrong. We can sue unions when they discriminate. But in some of those cases, there's nothing wrong with what they've done. But you're not asserting in those cases a cause of action against the union, and you don't even contend that you could. And that's – and that's exactly what we have here, Your Honor. We're not saying that the Navajo Nation did anything wrong. We're not trying to get the Navajo Nation to pay relief to the victims of Peabody's discrimination – the alleged victims of Peabody's discrimination. Well, I'm not – that may be overstating it. I think you are saying that the Navajo Nation did something wrong in putting this clause into the lease. You're not seeking damages from them. But I think you're saying they did something wrong because you're saying that this clause is illegal, which may or may not be. But that's what you're saying. Well, that's – I mean, I'm not sure that we're saying that there's anything wrong with the Navajo Nation doing it. The wrong is in Peabody accepting that provision and then – Oh, I see. I see the argument. Okay. I mean, if the Navajo Nation could have that contract with, for example, a company that had fewer than 14 employees, those companies are not covered by Title VII. And so the only reason that we need – I get it. We need the Navajo Nation there, though, because of their interest in the lease. And we can't have that provision declared invalid unless all the parties to the lease are there. And that's essentially why we're trying to join the Navajo Nation. And that's why we think that these other provisions of Title VII that essentially just reflect the fact that we don't have a cause of action against the Navajo Nation are simply irrelevant to that issue. And, of course, in the end, once the tribe is joined, they can choose how to – how at all to participate in this litigation. If they are content to let us fight this out with Peabody, they can sit back and let us do that, and the only consequence they'll face is a res judicata effect, which is the very purpose of joining them. If they instead, as I'm sure they – I expect that they will have an interest in arguing that this provision of the lease is valid, that Title VII allows them to do the – allows Peabody to agree to this provision or whatever argument they want to make, treaties, anything – any argument they want to make, the Court will hear it and it will have all of those arguments before it, and this case can be decided. I'd like to turn now to the political question doctrine, unless there are further questions on Joinder. We contend that this case is justiciable because it presents an ordinary exercise in statutory construction. The district court ruled otherwise because it thought that the Department of Interior's approval of the leases it issued constituted a nonreviewable determination of their legality. But as we pointed out in our brief, courts review agency actions all the time. And so even if we were to understand the Department of Interior's approval of the leases at question as somehow giving their stamp of approval that this complies with Title VII or that we've created an exception to Title VII, we dispute that that's what they've done with this. But even if that's what they intended to do with this, that's – it's up to the courts, not to the executive branch, to make that determination of whether, in fact, Title VII allows this exception. What the district court missed here is that the political question doctrine is a doctrine of constitutional law. It says that some questions are, under the separation of powers, committed to the unreviewable discretion of the political branches of government. There's no reason to think that the question in this case about the validity of Peabody's leases is one that the Constitution commits exclusively to the Department of the Interior. Rather, again, it's a paradigmatic example of a judicial question that can be answered using ordinary tools of statutory construction, we contend. And that's true, of course, even though the case might be seen to touch on sensitive issues about tribal sovereignty, because, as the Supreme Court has explained in Japan whaling and similar cases, merely because a case has some political overtones doesn't make it a non-justiciable political question if it otherwise would involve just ordinary issues of statutory or constitutional construction. And the political question doctrine, as it's been pointed out repeatedly, is a doctrine about political questions, not about political cases. And I think that suggests that the fact that the plaintiff here happens to be another branch of the Federal Government is essentially irrelevant to the analysis under the political question doctrine. The question is whether the cause of action that we're asserting, which – and whether the relief that we're suggesting requires a validation of these leases somehow is a political question, not whether it becomes a political question merely because it's a government agency rather than a private individual that's challenging that. You know, and again, if Peabody or the Tribe wants to argue that the Department of Interior has this power to exempt Title VII based on treaties or canons of statutory interpretation that are applicable to Indian matters or any other argument, that's fine. We'll gladly respond to those on the merits, and the courts are perfectly capable of deciding who's right. But under the district court's ruling, of course, we can't even reach that question because the Department of Interior's action is seen as being so definitive that it can't even be reviewed by the courts. So if that's – if there are no questions at this time on that, I would reserve whatever remaining time I have for rebuttals. I do have one question. Sure. And that is, suppose that the Navajo Nation itself had desired to put up a conference center and build it. EEOC could not make any claim with regard to discrimination on that basis. Could they directly? No, I believe not. With the one caveat I should say that it might be a different question if it was a corporation that happened to be wholly owned by the Tribe. That's an issue that I don't think has been decided, or at least I'm not aware of whether that's been decided. But if it was undisputed that it was the Tribe itself that was asking and not some corporation that was owned by the Tribe, then that's completely exempt from Title VII. So if you were to engage in a lease situation where a private contractor would put up this same conference center for the same purpose and so forth, your position is that they could sue that private contractor? Yes, Your Honor. That's exactly our position. Why does that make sense? Well, because the ñ I mean, I think it may go to the question of what the reason for the exception, the exemption of Indian Tribes from the definition of employer, why Congress put that in there in the first place. And the reason might be because Congress thought it was ñ that there were certain spheres of self-governance that were so closely tied to questions of Indian sovereignty that it wasn't appropriate to subject them to federal review. But when a company ñ when a company ñ or when a Tribe hires a private company that's covered by Title VII, that doesn't necessarily carry over. I mean, I would point out that there are lots of private companies ñ I understand that, but it just seems to me that if you're interested in not having the Navajos because that's what you really are worried about in the reservation, I'm not sure that it makes a lot of sense to me that ñ to distinguish between the lease situation and the actual ñ from a practical standpoint, and the actual desire to employ only Navajos. Well, I'd point out the fact that there are contractors both for ñ whether for Tribes or for Navajos all the time that don't lose their identity as private corporations merely because they're doing work for a government. And they don't necessarily step into the government's shoes there. And again, in this respect, I think it's important to note that the definition of employer under Title VII has a few exceptions. One of them is the federal government. The next one is a corporation wholly owned by the federal government, which I assume would be something like the FDIC or the Tennessee Valley Authority or something. And the third is Indian Tribes. It doesn't have a fourth for corporations owned by the Indian Tribes. And I think that the nonparallelism there might be significant in that respect. Now, as to why Congress chose to do it that way, I mean, I'm not sure. Congress did put an exception that may get to some of your concern, Judge Hubb, the Indian preference exemption. An employer working or employing on or near the Indian reservation may have a publicly announced preference for Indians, generally Native Americans, who live on or near the reservation. This Court determined in Dow of Indiwa I that that provision does not allow an employer to discriminate among Native Americans between the basis of tribal affiliation. And so that may be – but that exception may get to some of your concern there. Congress clearly recognized that employers working on the reservation do have – there is employment of Native Americans. And Congress wrote that exception into the Act. And that exception is not applicable here. Now, I've got the – I find myself interested by exactly the questions that Judge Hubb has been asking. And I assume those questions will come before the Court if we hold that a Rule 19 joinder is allowed. Exactly. But those questions are not in front of us today? That's our contention, Your Honor. Those would be questions that go to the ultimate merits of whether this lease provision is, in fact, invalid, whether Peabody has some defense. And the lower court will get to those questions if we say that the tribe can be joined under Rule 19a. If we say the tribe can't be joined under Rule 19a, the district court is not going to get to those questions. That's exactly right. And that there's no political question here. Okay. It prevents the Court from reaching those questions. Okay. If there are no further questions at this time, I'll reserve the rest of my time. Okay. Thank you very much. And we'll hear now from Ms. Bruno. May it please the Court. Mary Bruno for Peabody Western Coal Company. Your Honor, I submit to you that what we really have is a scenario where, in fact, the EEOC is seeking direct relief against the Navajo Nation by virtue of trying to join them as a Rule 19 party to this action. This Court has held many times over that you can't just unwind one legal strand of these particular leases between Peabody and Indian tribes. Let me ask you a different question, though, in terms of whether they're seeking relief in effect against the tribe. I want to ask a Rule 19 question. Is it required for joinder under Rule 19a when the defendant says, you know what, you can't bring suit against me because there's a feasible and indispensable party out there, you can't join the party, and therefore you can't go forward, is it required when the plaintiff says that the party is joinable, is it required that the plaintiff say I have a cause of action against the party sought to be joined? Your Honor, I think based upon the cases that you raised, the case you raised, the soaring, it is not required that they have an independent cause of action. It's not required that they have any cause of action? However... I heard the qualifier. Yeah. I do think that in this particular case, the fact that they are seeking relief in essence... Oh, yeah. ...goes directly to their... You slid off my question. I'm sorry. Is it required that the plaintiff have a cause of action against the party sought to be joined in order for there to be joinder under Rule 19? Well, in the case that they cite, the Lake Mojave case, that was in fact the case. There was a state law-based cause of action. In the case that you cite, I have not read the case that you cite. Okay. Was there required a cause of action by the plaintiff against the party sought to be joined in McMillan-Bloedel? No. But in that case, the union could be a respondent within the definition of Title VII, whereas in this case, the tribe can never be a respondent because it is outside the definition of employer. So the distinction in that particular Sixth Circuit case is a very statutory-specific definition of distinction. Let me ask it this way. What happens if this suit is going forward between the EEOC and Peabody Coal, and instead of Peabody Coal making a Rule 19 motion, the tribe makes a motion to intervene as of right under Rule 24a. Could the tribe intervene? I think probably the tribe could intervene. Then why are you wanting to apply a different standard? The reason I say that is that Rule 19a has almost identical wording to Rule 24a. The language in Rule 19 is, among other things, the person's absence may as a practical matter impair or impede the person's ability to protect that interest. That is to say it doesn't require a cause of action. We have precisely that language, not just approximate. We have precisely that language in Rule 24 allowing the outsider wishing to come in. So you're saying that language allows the tribe to come in but does not allow us to join the tribe? Your Honor, we have stated, and we were the ones who moved to dismiss because the EEOC did not move to join. So I think that's a very critical point. But that's the way it typically comes up. The defendant says, I want to dismiss because you've not joined the other one, and I want this person in here. That's right. But my point in saying that is we both agree that the Navajo Nation has interest. We both agree that the Navajo Nation is a necessary party. It's when you get to the analysis under Rule 19b that we think the feasibility issue becomes paramount, which is if that's the case, if the Navajo Nation is necessary, does the EEOC have authority to proceed with this case given the fact that the Navajo Nation is a government and there will be direct relief against the nation if, in fact, the EEOC is successful? Because he's sort of forgotten this point. I'm sorry. You said direct relief against the nation. I don't think any direct relief is sought. As a practical matter, the relief will affect the nation. But I don't think they're seeking any order that would run against the tribe, are they? Your Honor, they are seeking, as he stated this morning, to invalidate the lease provision, just as much as that provision is in lease. I had a more precise question than that. Are they seeking any relief that would run directly against the tribe in the sense of an order to the tribe? They're seeking injunctive relief in a very broad sense in the complaint, which could encompass the tribe. Now, they have said that. There's a yes or no answer to that. Are they seeking an order that would run to the tribe, naming the tribe, or are they seeking only orders that would run to Peabody Coal? It's not clear, based upon the injunctive relief that they have stated in the complaint. Originally, at the district court level, they indicated that it is possible for the district court to actually issue an injunction that would, in fact, affect the tribe. On appeal, they've said they're not asking for an order. That's a helpful answer. Okay, thank you. Yeah, I got it. So at this point, I submit that if, in fact, there is a possibility that this lease provision will be unraveled, it is just as much of a remedy, a form of relief against the tribe as it is against Peabody. And as a result, it triggers other obligations. Another distinction made in Title VII statutory scheme between which part of the Federal Government has authority to proceed in cases involving a governmental entity. Title VII says it's the Attorney General's Office that has the authority to proceed against Federal Government agencies, other forms of governments, and political subdivisions. So our argument is, at this point, we think that they're trying to accomplish basically indirectly what they otherwise could not accomplish directly, and it does no service to the court to basically stand behind this idea that the nation is, in fact, not going to be affected by any form of relief. That's a really interesting argument. And in a way, you're quite right when you say that the EEOC is trying to accomplish indirectly what it cannot accomplish directly. But we could flip this and say, well, we know that the tribe, if it did this on its own, building its own conference center or doing its own mining, could have this clause that provides preferential treatment for the tribe. But it's not clear that the tribe could do this by hiring an outside company. That is to say, it may be seeking to do something indirectly that it knows it could do directly, but it doesn't want to do it directly because it's too hard for it to set up an independent corporation. So we've got a variation of the problem on both sides of the case. I think if you look at these leases and their historical context, what you would see is that there was a recognition on the part of previous executive parts of the administration of the need for the development of power in the southwest. And what you see is the Department of Interior, through the Secretary of Interior, strongly encouraging the Navajo tribe, as well as the Hopi tribe, to enter into provisions, leases, which would allow the development of these resources, and specifically a generating plant. And I submit to you that in part that occurred because there was this recognition that there needed to be not only power, but a way to effectuate economic independence on the part of the Navajo tribe. And as a result, what we see is the Secretary of Interior basically going down the policy path of encouraging that by way of putting in a provision regarding preference. Because in the Diwa Vendola I and II cases, we see the court recognizing that, in essence, what's happening is that the Navajos have traded off their coal and their water for jobs, whether they be jobs related to the SRP power plants, or that was at issue in the Diwa Vendola cases, or the coal that's mined to supply that plant, which is the Peabody coal. And as Judge Hugg has already indicated, and I have to say by my questions I've indicated, it's a really tricky question as to whether or not the Navajo can insist, as a condition, on preference for their own tribal members, not as distinct from non-Indians, but I guess the cruelly question is as between Navajo and Hopi. I mean, there is no argument here about whether the tribe could say only Indians. I mean, that's not the fight. The fight is whether or not the tribe can say no Hopi. But that's a really hard question. But if you succeed on your Rule 19 motion, the court's never going to get to that question. Part of our Rule 19 motion directly addresses whether or not, if you take that the Navajo Nation is a necessary party, you have to examine whether or not once they're joined, the EEOC continues to have authority. And we submit that they don't because of the statutory breakdown between the responsibilities of the Attorney General to proceed against a government, which the EEOC concedes that the Navajo Nation is. And as a result, we do not see the EEOC being in the correct posture, i.e., that the joinder as its posture would not be feasible because it would divest the EEOC of its authority to proceed. Now, whether or not the Attorney General could proceed, based upon that statutory distinction, is another way to get at your question, which is is there some way that the court could actually hear this potential dispute. If you do not agree that this is a case that is not justiciable. We believe that the case is not justiciable because it does call upon a court initially in making a decision in the case to determine which federal policy of which agency it's going to uphold. The federal policy of the EEOC that basically came out in 1988 saying you can't discriminate on the basis of tribal affiliation. We think that's a form of national origin discrimination. Or a much older and longer standing policy by the Department of Interior, carried out by the Secretary of Interior, that basically put these preference provisions in the leases to begin with that are very clearly tribal affiliation selective. And your client, the coal company, is, of course, caught in the middle and doesn't want to be litigating this without the presence of the Navajo Tribe, which makes perfect sense to me, which is why, of course, they're a necessary party. And both of you, both sides are in agreement on that point. Yes, Jerome. Yeah, sure. Yes. As a result of that, I mean, we basically believe that in the case, because it presents this federal policy question, not the federal policy as to whether or not the Department of Interior can somehow invalidate Title VII, but the federal policy that the Department of Interior is carrying out under the Indian Mineral Leasing Act, which is, in essence, a policy of encouraging mineral leasing in order to develop economic independence for these tribes. And all of the things that are attendant to that, which in this particular case, are the actual inclusion of a tribe-specific employment preference in the terms of a lease. And these leases and the form of lease that were attached to the drilling and mining permits predate the enactment of Title VII. Since the enactment of Title VII, the lease provisions have not been changed by the Department of Interior where the lease has been amended on two separate occasions. The Secretary of Interior has reviewed the lease on two separate occasions There now includes a section that reaffirms all the previous lease provisions that are not amended, which include these employment preference provisions. But in a sense, this really goes to your political question argument. But in a sense, your argument goes so far as to say any time the federal government does something through the Interior Department or something else, we can't get at the decision as to whether that's right or wrong. You clearly can't be there. Is this because we have a fight between the EEOC as to what Title VII means and the Interior Department as to what they're going to do? I mean, we see these cases all the time. I don't suggest that there's nothing that can be done. I suggest that Congress must make some decision about what policy is paramount in terms of whether or not it's going to develop Indian independence. But you see, maybe it has. And if we can get past the Rule 19 joinder issue, I think that question then goes to the district judge. And, you know, we read statutes all the time that have either real or asserted conflicts, and we just kind of have to pick and choose. And if we get it wrong, somebody's going to tell us. Your Honor, I submit to you that the issue under one of the Baker v. Carr formulations is one that calls for an initial policy decision to be made. And it also is an issue under another one of the formulations, which basically could subject Peabody to multifarious pronouncements by various departments on this particular issue. I mean, right now you have the Secretary of Interior approving these lease provisions as recently as 1999. You've got the Dawa Vandewa case, which you heard, the initial one, Dawa Vandewa 1. Basically, it comes along and says, well, we agree with the EEOC's policy position that tribal affiliation is a form of prohibited national origin discrimination. And as a result, what we see is a direct conflict, already two different pronouncements by various parts of the government, the judiciary and Congress and specifically the executive branch, on the issue of whether or not federal Indian policy, and specifically federal energy policy as it's tied to federal Indian policy under the Indian Mineral Leasing Act, actually would allow the Secretary of Interior to have this kind of a provision within a lease. And you will see from the Navajos position, as this Court has recognized in Dawa Vandewa, both of the Dawa Vandewa cases, that the employment on the reservation was an essential quid pro quo for the leases to begin with. You will see in those cases that there was, in fact, and we've attached it in our supplementary excerpts of record, there was, in fact, a position taken by the Secretary of Interior encouraging the tribe to, in fact, allow the leasing and development of the generating station and the leasing that would be necessary for the coal mines in order to, which would be basically supplying the coal to the Navajo generating station. And you see that that particular statement is replete with statements regarding the economic independence that the tribe could achieve, the economic effects that the tribe could achieve by allowing this through employment on the reservation. And as a result, we believe that this case, in fact, presents a non-justiciable question, because we have a very distinct position taken by the Department of Interior about federal Indian policy. And Dawa Vandewa in both decisions left open the door for the discussion and the ability to raise federal Indian policy as a potential issue in the case. And we submit to you that in those cases they didn't raise the issue of the Secretary of Interior's responsibility, the Secretary of Interior's involvement in the actual leasing process and the insistence of the preference provision and issue in the terms of the lease by the Secretary of Interior. But we have raised that, and we believe as a result that we've raised one of the formulations under Baker v. Carr that would require this Court to affirm the decision below. Does anyone else have any questions? Yes. There were two claims filed by the EEOC. One of them was Title VII, and the other was for an alleged violation of the record-keeping provisions of 42 U.S.C. Section 2000E8C. The district court dismissed the entire action, granting summary judgment. What was the basis for the dismissal regarding the record-keeping against Peabody? I believe that the Court, when it reached its finding that the EEOC did not have authority and that the Attorney General would have authority if it all ñ in light of the fact that it also reached the decision that it was unconscionable ñ I'm sorry, not unconscionable, but unjusticiable. I believe that the Court was saying that if it had not found on the justiceability issue the way that it did, the Attorney General would have to bring the action. And under this statutory scheme, the Attorney General can bring an action for record-keeping as well. Against Peabody? Yes, in the interest of judicial economy. And that's allowed by the statute. Was that argued to the Court? We did not argue that to the Court. We argued that the Attorney General was the one who had the authority, not the EEOC. And in all of those sections ñ To bring the action against Peabody about record-keeping. To bring the action against Peabody as it was posed, which obviously includes both of those clauses of action. But we did not say specifically about ñ we didn't address specifically. So the district court didn't give a basis for dismissing that claim? The court did not specifically give a basis for it. At this point, since the Court found that the Attorney General, as opposed to the EEOC, would have the authority, it's clear under the statutory scheme that the Attorney General can proceed against both a private party and a governmental entity, whereas the EEOC cannot. So I'm not sure that the Court did a specific analysis of that. But the Court did specifically analyze that the Attorney General was the appropriate party. And the statutory scheme does allow the Attorney General to pursue the record-keeping claim. You know, I'm sorry to have asked this question so late. And this may not be something within your purview. Maybe I have to ask the other side, but I'll start with you. What happens if we have a company that has a contract with, say, the state of California, and the contract has in it a clause that the EEOC thinks is discriminatory? Can that company be sued by the EEOC for discrimination? Well, I would say that it would be a position where the company could potentially be sued by the EEOC. The argument would be the same, that the state is a necessary and indispensable party, because one would have to be joined. And as a result, this issue would come up. And I think the same argument would be made. But under your argument, any time the state enters into a contract with a private company that contains within it a clause that, at least according to the EEOC, violates Title VII, the EEOC can never bring suit against the private company to get rid of that clause because it's in a contract between that company and the state. I would agree with you, Your Honor. That's where your argument is headed. There are no cases that suggest that they do have authority. They cite one case where the parties did not raise the issue, and that's the Union de la Autoridad. I can't remember the rest of it, but it's the Puerto Rico case. In fact, no one raised the issue of whether or not it was appropriate for the EEOC to, in fact, sue the governmental entity or join the governmental entity employer in its suit against the Union. And I would submit to you that that is the one and only case. They did. They did. But your argument wasn't really argued. It wasn't argued whatsoever. They did it because they didn't think of the argument, I guess. Yeah, exactly. Maybe it's because they were so silly or because it was so obvious or for some other unstated reason. Well, I mean, we have all of those cases out of the Eastern District of Illinois that say the exact opposite. They say three times over, you can't do it, EEOC. Just bringing a governmental entity in to defend is enough to basically be putting them in a position where you have to turn this over to the Attorney General's office. And I submit to you that those are the more appropriately reasoned cases. Okay. And thank you for your argument. Just a few points in rebuttal quickly. Taking that last point first, Your Honor, our position would be exactly the same if this was a State rather than a tribe. The Northern District of Illinois cases that they're citing concern a much trickier situation where we're bringing the State in as the employer. And that, of course, does trend much closer to the question of the division of authority between the EEOC and the Attorney General. And in light of those cases, we don't bring those kinds of cases anymore. The Puerto Rico case is the only other one that I'm aware of like that. But if we're talking about where the State is not acting as the employer, it's just a leaseholder or, you know, has some other role, contractual role, and analogous to this case, our position would be exactly the same, that we can sue the private company and bring in whatever parties are necessary in order to effectuate that. Now, I hear Ms. Bruno arguing that the Attorney General has the power to proceed in this case. I'd suggest that, putting aside the non-justiciability question, I'd suggest that their arguments apply equally to the Attorney General. I mean, at core, their argument is that the Navajo Nation can't be sued for its own employment practices. And that's true whether it's the EEOC or the Attorney General or a private individual or anybody. They're not just not covered by Title VII. So I think that's equally true. I'm not sure what her basis is for arguing that the Attorney General could proceed with the recordkeeping claim. I don't think there is any reason why the Navajo Nation is a necessary party to the recordkeeping claim. And, I mean, I can't conceive of any reason why they would have an interest in what applications the company does or does not keep on file. The provision, this is a separate provision of Title VII that, as Judge Alarcon pointed out, it provides that the commission or the Attorney General in a case involving a government or employer can petition the court. But I'm not sure what the basis is for arguing that the Attorney General can proceed even against a private individual on that basis. And the only other point I would make briefly is Peabody is arguing about the fact that these lease provisions weren't changed by the Department of Interior when various unrelated amendments were applied. I think it's important to keep in mind what the role of the Department of Interior is in the statutory scheme. The Supreme Court explained it, I think, very well in the recent Navajo Nation v. United States case that we cited in our brief, where the mining leases statute was set up to have the tribe take the lead role in negotiating the lease with the private individual. That's subject to the Department of Interior's approval. But it's not the Department of Interior's role to impose lease conditions on the parties. And that was, I think, the basis for the holding in that case, that the Navajo Nation could not sue the United States for approving a less than advantageous lease conditions. And if there are no further questions, I don't have anything else to add. Okay. Let me say, before we quit, though, I'd like to say one thing. Judge Hugg is not here on the bench with us, so Judge Alarcon and I are passing notes to each other. Judge Hugg, I'm going to tell you the note. The two of us thought that it might be useful to get supplemental briefing on the Rule 19a point. The case that I mentioned to you, our case, I think neither of you is aware of, and I didn't become aware of it early enough to alert you. It's National Wildlife Federation v. ESPE, and I'll give you the citation. 45 F. 3rd, 1337. And there are two cases that you will run into when you read this, both of them out of circuit, but both of them either relied on or distinguished by our case, the ESPE case. They are Sierra Club v. Hodel out of the 10th Circuit, and that citation is 848 F. 2nd, 1068. And the other case is Vieux Carre Property Owners v. Brown out of the 5th Circuit, and that citation is 875 F. 2nd, 453. But the one case that's ours is the National Wildlife Federation v. ESPE. If you could submit to us within 10 days simultaneous letter briefs addressing that authority with the focus on the 9th Circuit authority, but you don't have to confine yourself to that. You may want to discuss these other cases. Ten pages each side. You may not need that much. Don't feel obliged to write to the bottom of the tenth page. But we would appreciate some additional assistance. Thank you very much. Thank you very much for very useful arguments on both sides. It's a pleasure to have lawyers with good arguments. The case is now submitted for decision. Thank you.
judges: Hug, Alarcon, W. Fletcher